IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*FILED U.S. DISTRICT COURT DISTRICT OF MARYLAND 2017 OCT -6 PM 2: 24 CLERK'S OFFICE AT BALTIMORE BY_____ DEPUTY*

Chris Michael Coughlin

_____

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

LJT & Associates, Incorporated

_____

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Complaint for Employment Discrimination

JFM 17 CV 2949

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☐ Yes   ☐ No
*(check one)*

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Chris Michael Coughlin |
| Street Address | 3247 Chrisland Drive |
| City and County | Annapolis, Anne Arundel County |
| State and Zip Code | Maryland, 21403 |
| Telephone Number | 410-279-7273 |
| E-mail Address | chriscoughlin33@gmail.com |

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | LJT & Associates, Incorporated |
| Job or Title (if known) | |
| Street Address | 9881 Broken Land Parkway, Suite 400 |
| City and County | Columbia, Howard County |
| State and Zip Code | Maryland, 21046 |
| Telephone Number | (443)-283-2500 |
| E-mail Address (if known) | |

2

Defendant No. 2

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 3

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

*(If there are more than three defendants, attach an additional page providing the same information for each additional defendant.)*

C.  **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | LJT & Associates, Incorporated |
| Street Address | 9881 Broken Land Parkway, Suite 400 |
| City and County | Columbia, Howard County |
| State and Zip Code | Maryland, 21046 |
| Telephone Number | (443)-283-2500 |

3

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

- ☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☑ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

- ☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

    *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☐ Other federal law *(specify the federal law)*:
    _____

- ☐ Relevant state law *(specify, if known)*:
    _____

- ☐ Relevant city or county law *(specify, if known)*:
    _____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☐ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) ___2015___

C. I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☒ age. My year of birth is __1961__. *(Give your year of birth only if you are asserting a claim of age discrimination.)*
- ☒ disability or perceived disability *(specify disability)* __Daughter's lyme disease__

5

E. The facts of my case are as follows. Attach additional pages if needed.

See attached Charge of Discrimination

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

9/8/2015

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 7/10/2017.

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

V.  **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached Damages Worksheet for detailed computation of Wages/benefits damages.

I am seeking damages for lost wages, bonuses and benefits from my termination date to the date of starting a new job. I am also seeking front pay for 6 months for the difference between my previous salary and the salary at my new employer and in addition, the added cost of having to commute and live out of state.

I am also seeking $25,000 in punitive damages for mental stress and anxiety of being out of work and still paying my bills.

I am also seeking payment for incurred attorneys' fee of $20,000.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/6, 2017

Signature of Plaintiff  *[signed]*
Printed Name of Plaintiff   Chris Michael Coughlin

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

### B. For Attorneys

Date of signing: _____, 20__.

Signature of Attorney   _____
Printed Name of Attorney   _____
Bar Number   _____
Name of Law Firm   _____
Address   _____
Telephone Number   _____
E-mail Address   _____

### III. - Statement of Claim

I am claiming that LJT & Associates, Incorporated fired me due to my age, 53, and the increasing cost of my daughter's medical costs due to her disability. LJT had neither performance issues nor attitude issues with me but they did have great performance reviews documented from my bosses, 2 different CFOs. When I was released, LJT told me that I did not have the skill set to continue to perform my job (of 5 years). This was the first time I was told that I was lacking the skills necessary to perform my job. LJT must have believed that I would not be able to improve my skills. LJT was also in the midst of recompeting their largest contract (greater than 50% of their business) and needed to ensure that medical rate were low in order to be able to bid lower wrap rates.

### III E. - Charge of Discrimination

1. At all times relevant hereto, Chris Coughlin resided at 3247 Chrisland Drive, Annapolis, Maryland 21403, and was a citizen of Anne Arundel County, Maryland.

2. At all times relevant hereto, LJT & Associates, Inc. ("LJT"), a corporation licensed and doing business in the State of Maryland, is and at all times mentioned herein was an employer within the meaning of Title 20 of Maryland's State Government Article ("Title 20"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and the Howard County Code.

3. Mr. Coughlin was employed by LJT in Columbia, Maryland, and the employment practices complained of herein all occurred in Howard County, Maryland.

4. LJT's Chief Financial Officer ("CFO"), Andrew Fleischer ("Mr. Fleischer"), terminated Mr. Coughlin on July 29, 2015, with an effective termination date of August 1, 2015. The facts demonstrate that Mr. Coughlin's termination was the result of age discrimination. Mr. Coughlin is 53 years of age. The facts further demonstrate that LJT discriminated against Mr. Coughlin because his daughter has a disability, in violation of Title 20 and the ADA.[1]

---

[1] The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or

5. Mr. Coughlin began working for LJT as Controller on August 23, 2010. As Controller, Mr. Coughlin's job responsibilities included, but were not limited to, planning, designing, implementing, controlling and managing all LJT financial operations; accounting; budgeting and forecasting; payroll; accounts payable; accounts receivable; cash management; taxes; internal and external financial reporting; and the oversight and audit requirements for public and government audits/reviews.[2]

6. Mr. Coughlin performed at or above LJT's legitimate and reasonable expectations as Controller for the entirety of his tenure with the company. Further, on or about April 17, 2015, Mr. Coughlin assumed the responsibilities of the CFO position on an interim basis, and similarly performed in that role at or above LJT's legitimate and reasonable expectations. On or about May 13, 2015, Mr. Fleischer was hired as LJT's CFO, and took over that role permanently, also becoming Mr. Coughlin's supervisor in Mr. Coughlin's role as Controller. On July 29, 2015, Director of Human Resources Nicole Wilkinson, ("Ms. Wilkinson"), and Mr. Fleischer met with Mr. Coughlin, summarily terminating him, effective August 1, 2015. Despite all evidence to the contrary, Mr. Fleischer stated that the reason for Mr. Coughlin's termination was because Mr. Coughlin "did not have the skill set required for the position [Controller]." No performance issues were asserted, and the below evidence demonstrates that Mr. Coughlin's performance as Controller at LJT was stellar, and that his skillset was sufficient for the entirety of his tenure with the company. Thus, LJT's nondiscriminatory justification for Mr. Coughlin's termination—that he did not have the requisite skill set for the position—is pretexual. In fact, Mr. Fleischer

---

association." 42 U.S.C. § 12112(b)(4). The ADA also forbids adverse treatment in the area of health insurance for an employee whose dependent is disabled, even when this will result in higher costs to the employer. *See* Interpretive Guidance, 56 Fed. Reg. 35,747 (1991).

[2] *See* August 17, 2010, LJT offer letter to Mr. Coughlin.

2

terminated Mr. Coughlin due to his age and because LJT grew frustrated with the high insurance costs it paid for Mr. Coughlin's daughter's medical care.

7. Any legitimate business reason LJT may assert for Mr. Coughlin's termination would be pretextual, as Mr. Coughlin's record clearly demonstrates satisfactory performance during his employment at LJT. While LJT may try to argue that Mr. Coughlin's termination was the result of negative performance[3], the facts establish that any criticism of Mr. Coughlin's performance is pretextual. Mr. Coughlin received all positive performance assessments during his employment with LJT. He earned numerous merit salary increases and bonuses during his tenure at LJT, including in the months immediately prior to his discriminatory termination. Mr. Coughlin never received a negative performance evaluation. Further, prior to the termination at issue herein, he never received any kind of disciplinary action at LJT.

8. Mr. Coughlin's skill set throughout his tenure at LJT has been sufficient to achieve positive performance reviews, merit salary increases, and bonuses.

9. Mr. Coughlin's July 11, 2012, performance review for the review period August 23, 2010, to May 25, 2012, stated, in relevant part[4]:

- Mr. Coughlin received an overall rating of 4.32 (Excels)[5]
- "Chris is an outstanding problem-solver and works well in groups."

---

[3] In a phone conversation with Ms. Wilkinson on August 11, 2015, Ms. Wilkinson stated to Mr. Coughlin that he was terminated for his performance, in addition to not having the requisite skill set for the Controller position. No mention of Mr. Coughlin's performance was made in the July 29, 2015, meeting during which he was terminated. Further, Mr. Coughlin's July 29, 2015, termination letter states no reason whatsoever for his termination.
[4] The below-selected quotes from Mr. Coughlin's July 11, 2012, performance review are representative, but not exhaustive, of the information contained in said performance review.
[5] "Excels" is a rating given to those employees garnering an overall grade of 4.25 to 4.49 out of a possible 5.00 points. "Excels" means that an employee "[c]onsistently exceeds the normal expectations for the position; exceeds expected criteria for quality, quantity, and timeliness of work; consistently exceeds goals and objectives; achieves results beyond those expected for the position."

- "Chris is able to describe even complicated financial transactions or ideas to non-financial leaders. He is very good assessing his audience and speaking/writing to the correct level of detail."
- "From new software to new contracts, from proposal ideas to new monthly close actions, Chris generates workable ideas and develops them to completion."
- "Chris is an outstanding generalist who applies his knowledge and experience very well to specific and technical aspects of his job."
- "I am consistently impressed by the high level of judgment Chris shows in decision-making."
- "Chris's work is accurate and neat and of high quality."
- "Chris maintains himself very well despite frequent high-pressure periods. He is often in the hot-seat on items that require quick turn-around and rejuggling of priorities. He handles these periods with tremendous grace and ease and is the calming influence a leader should be."
- Summary and Overall Evaluation: "Much has been asked of Chris and much has been delivered. From nursing Costpoint during infancy, adding two major contracts immediately thereafter – with a third soon to follow, changing cost structures among many other items as a result of ROC, changing 401k and payroll vendors – the later requiring extensive process changes, and the multitude of operational refinements that, taken together, has provided the foundation for our current day sound financial stability and operational efficiency. Chris's abilities, judgment, skills, [sic] initiative are top notch. Chris's focus has migrated from individual contributor/task performer to task overseer and should now emphasize service

model refinements. This progression of focus has been rapid, as has been required by and [sic] organizational growth/business need. Chris has adapted well to the many changes over his tenure and continues to lead many aspects of required change. He has done well at delegating tasks and responsibilities to his staff, and his ability to escalate this delegation while maintaining control in terms of quality, service and efficiency will largely determine his future success."

10. Mr. Coughlin's December 12, 2013, performance review for the review period June 4, 2012, to December 4, 2013, stated, in relevant part[6]:

- Mr. Coughlin received an overall rating of 4.25 (Excels)[7]

- "Chris listens, processes, and understands problems that are brought to him and consistently forms constructive and efficient solutions."

- "Chris entered his position with strong knowledge and continued to apply this knowledge successfully to his job."

- "Chris consistently exercises outstanding judgment."

- Summary and Overall Evaluation: "Chris is a tremendous asset to LJT and is a pleasure to work with. He brings a calm optimism to all he does, generally tempering an often highly charged environment. His role frequently puts him in the center of firedrills [sic] that he typically handles with professionalism and expertise. His team has had significant successes over the term…"

---

[6] The below-selected quotes from Mr. Coughlin's December 20, 2013, performance review are representative, but not exhaustive, of the information contained in said performance review.

[7] "Excels" is a rating given to those employees garnering an overall grade of 4.25 to 4.49 out of a possible 5.00 points. "Excels" means that an employee "[c]onsistently exceeds the normal expectations for the position; exceeds expected criteria for quality, quantity, and timeliness of work; consistently exceeds goals and objectives; achieves results beyond those expected for the position."

11. Mr. Coughlin's June 4, 2015, performance review for the review period December 5, 2013, to June 4, 2015, stated, in relevant part[8]:

- Mr. Coughlin received an overall rating of 3.34 (Adequate)[9][10]

- "Chris is an excellent 'fire fighter' and thrives on making order out of daily chaos and fire drills that emerge like union grievance or payroll errors. He's also very bright and has a strong knowledge of the LJT financial rates, systems, and rules, practices, and procedures.

- Summary and Overall Evaluation: "Chris does a good job leading the finance and accounting teams, managing through daily emergencies, controlling the company's finances and reporting activities. He adds strong value with his company rate and proposal pricing guidance. He could improve in the areas of delegation and holding his reports accountable."

12. In addition to, and consistent with, Mr. Coughlin's demonstrated positive performance, as detailed above, Mr. Coughlin received bonuses and merit salary increases during his tenure with LJT. For example, in 2015 alone, Mr. Coughlin received performance bonuses on February 6, 2015, and April 1, 2015, in the amounts of $12,219.45 and $6,585.00, respectively. Further, Mr. Coughlin received a bonus in the amount of $15,000.00 on April 15, 2015, in

---

[8] The below-selected quotes from Mr. Coughlin's June 4, 2015, performance review are representative, but not exhaustive, of the information contained in said performance review.

[9] "Adequate" is a rating given to those employees garnering an overall grade of 3.50 to 3.74 out of a possible 5.00 points. "Adequate" means that an employee "[c]onsistently performs all duties of the position in a fully capable manner; meets all expected criteria for quality, quantity and timeliness of work, including meeting goals and objectives."

[10] The creation and presentation of Mr. Coughlin's June 4, 2015, performance review was assigned by LJT's Chief Executive Officer ("CEO"), Robert Conrad ("Mr. Conrad"), to Mr. Fleischer even though Mr. Fleischer had been with LJT for less than one month. Thus, as Mr. Coughlin's supervisor, Mr. Fleischer had very limited time to observe and evaluate Mr. Coughlin's performance. Mr. Coughlin requested through Human Resources ("HR") a meeting to review and discuss the performance review. Mr. Coughlin met with Mr. Fleischer and Mr. Conrad to discuss the performance review, but was informed by Mr. Conrad and Mr. Fleischer that the scores indicated in the performance review accurately represented Mr. Coughlin's performance.

recognition of his efforts in performing LJT's CFO responsibilities on an interim basis. Moreover, on June 24, 2015, a mere two months prior to his termination, Mr. Coughlin received a merit salary increase of 4.73% of his base salary.

13. Based on Mr. Coughlin performing at or above LJT's legitimate and reasonable expectations throughout his tenure at LJT, including in the period immediately preceding his discriminatory termination, it is evident that Ms. Wilkinson's verbal representation to Mr. Coughlin on August 11, 2015, that his performance was one reason for his termination, is mere pretext. Similarly, Mr. Fleischer's representation to Mr. Coughlin upon his termination that his skill set was lacking is also pretextual. Based on the above performance appraisals, bonuses, and merit salary increase, Mr. Coughlin's skill set was anything but lacking, and clearly sufficient by LJT's own metrics.

14. Mr. Fleischer terminated Mr. Coughlin because of his age and due to the fact that LJT grew tired of paying high insurance costs for Mr. Coughlin's daughter's health care.

15. In August 2011, Mr. Coughlin's daughter, then age 14, began a four year medical journey. She had always been healthy and active as a competitive dancer. However, in August 2011 she suddenly became ill. Mr. Coughlin and his wife started seeking answers from their daughter's pediatrician who unfortunately could not explain her persistent headaches, joint pain, and fatigue. In pursuit of a diagnosis, she required an unprecedented amount of doctor appointments and treatments. Specialists treating her included orthopedists, rheumatologists, gastroenterologists, cardiologists, neurologists, and infectious disease doctors as well as integrative specialists and nutritionists.

16. Mr. Coughlin's daughter's medical journey has been complex and trying, with a diagnosis beginning with a working differential of ankylosing spondylitis, working differential of

lupus, working differential of undifferentiated connective tissue disease, and a working differential of secondary fibromyalgia. After numerous tests and exams, all were eventually ruled out. She was finally diagnosed with Lyme disease[11] in August 2012 through bloodwork. Mr. Coughlin's daughter has a disability and her Lyme disease is protected under the ADA. At all times pertinent hereto, LJT was aware of the fact that Mr. Coughlin's daughter has a protected physical disability.

17. Mr. Coughlin's daughter's symptoms include joint pain, fatigue, arthritis, numbness and tingling in her hands and feet, neuropathy, GI issues, abdominal pain, nausea, muscle weakness, headaches, chest pain, and shortness of breath. She is coping with chronic illness. Her impairment adversely affects her major life activities of breathing and walking, among other downsides.

18. Throughout the duration of her medical issues and in diagnosing and treating her impairment, she has required a frequent amount of specialized blood work, MRIs, sonograms, colonoscopy, upper endoscopy, physical therapy, intravenous ("IV") fluids, a Pic-line for antibiotics, medications and, most recently, intravenous immunoglobulin ("IVIG")[12] treatment.

19. Many of Mr. Coughlin's daughter's treatments, procedures and medical appointments were covered by insurance. However, LJT is self-insured for medical insurance[13], and once Mr. Coughlin's annual deductible was met, LJT covered a large number of continuing bills for his daughter's health care needs to address her impairment and associated ongoing issues. LJT grew frustrated with accommodating these necessary albeit substantial expenditures for Mr. Coughlin's daughter. For example, in February 2013 a Pic-line was recommended by an infectious

---

[11] Lyme disease is caused by the bacterium *Borrelia burgdorferi* and is transmitted to humans through the bite of infected blacklegged ticks. Typical symptoms include fever, headache, fatigue, and a characteristic skin rash called erythema migraines. If left untreated, infection can spread to joints, the heart, and the nervous system.

[12] IVGV is a blood product administered intravenously. It contains the pooled, polyvalent, IgG antibodies extracted from the plasma of over one thousand blood donors. IVIG's effects last between 2 weeks and 3 months.

[13] Upon information and belief, LJT has been self-insured for medical insurance for the previous two to three years.

disease doctor for IV antibiotics after oral antibiotics were ineffective. Mr. Coughlin submitted a claim for this Pic-line treatment to LJT, but LJT's provider denied both the claim and Mr. Coughlin's appeal. Mr. Coughlin presented an appeal to LJT management to cover the treatment, but it was denied.

20. Unfortunately, in September 2014 Mr. Coughlin's daughter began fainting multiple times per day and was put on medication by a cardiologist from Children's National Medical Center ("Children's"). The cardiologist suggested additional tests to continue the quest for an answer to her ongoing symptoms. A neuronal antibody study indicated an elevated antibody, leading to the recent IVIG therapy, which was necessary to address her symptoms and ongoing treatment of her impairment. The Children's cardiologist also diagnosed her with postural orthostatic tachycardia syndrome ("POTS")[14]. The IVIG treatment went through third-party review with the insurance company and was approved. In addition to the approval, the third-party review documented necessary criteria for continued approval of these treatments. She was given 2 treatments, (both approved by LJT's third-party reviewer) one on June 22, 2015, and one on June 23, 2015, (a six hour infusion each day). Each of these necessary treatments cost $15,000.00. Mr. Coughlin's daughter showed improvement and met the criteria as documented in the third-party review for further IVIG treatments, but third-party review denied her a third treatment on August 11, 2015.[15]

21. LJT's management, including Ms. Wilkinson, Mr. Conrad, LJT's owner, Leonid Tasheiko ("Mr. Tasheiko"), and former CFO, Donald Hough ("Mr. Hough"), are intimately aware

---

[14] POTS Syndrome is a condition in which a change from the supine position to an upright position causes an abnormally large increase in heart rate, called tachycardia. Other symptoms of an orthostatic nature — occurring in response to upright posture — may accompany the tachycardia.

[15] Mr. Coughlin and his wife were told that they could file an appeal, which by law has 30 days to be reviewed. However, Mr. Coughlin's insurance expired on August 31, 2015, due to his discriminatory termination. Mr. Coughlin did indeed file an appeal, but his insurance expired prior to any potential approval

of Mr. Coughlin's daughter's impairment and have known about her ongoing medical issues since at least Winter 2011. Further, Mr. Coughlin had several conversations with Mr. Fleischer regarding his daughter's condition, even in the short time they worked together. The above-detailed facts suggest that LJT grew increasingly frustrated with the health care costs it was forced to bear in treating Mr. Coughlin's daughter's disability. The two $15,000.00 treatments in late June 2015, a mere month prior to Mr. Coughlin's termination, were the proverbial straw that broke the camel's back. LJT management terminated Mr. Coughlin due to his age and to eliminate a substantial insurance cost, to the detriment of Mr. Coughlin's daughter and family.

22. As a result of LJT's discriminatory actions, Mr. Coughlin has incurred lost wages and benefits. Mr. Coughlin has also experienced emotional distress, which he is not seeking treatment. Due to the work environment he is applying for jobs, emotional stress could hamper his ability to be employed in areas where a clearance would be necessary. He has also incurred attorneys' fees and costs.

23. LJT intentionally, willfully, and wantonly discriminated against Mr. Coughlin in violation of Title 20, the ADEA, the ADA, and the Howard County Code.

_____
Chris Coughlin